UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 19-CR-20182-RAR/STRAUSS**

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**EDWARD MINNIS**,

    Defendant.

_____/

**ORDER REJECTING REPORT AND RECOMMENDATION
AND DENYING MOTION FOR COMPASSIONATE RELEASE**

**THIS CAUSE** comes before the Court on United States Magistrate Judge Jared M. Strauss's Report and Recommendation on Defendant's Motion for Compassionate Release [ECF No. 207] ("Report"), entered on January 14, 2021. In his Report, Magistrate Judge Strauss recommends that the Motion for Compassionate Release filed by Defendant Edward Minnis [ECF No. 194] be granted. *See generally* Rep. Specifically, the Report advises the Court to impose a term of supervised release equal to the unserved portion of the original term of imprisonment—with a special condition of home confinement enforced by electronic monitoring. *Id.* at 14.

Disagreeing with the Report's conclusions, the Government timely filed objections to the Report [ECF No. 208] ("Objections"), and Defendant filed a response to the Objections [ECF No. 209] ("Response"). Having carefully reviewed the Motion for Release, the Report, the Objections, the Response, the record, and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Report [ECF No. 207] is **REJECTED** as set forth herein, and Defendant's Motion for Compassionate Release [ECF No. 194] is **DENIED**.

## BACKGROUND

On July 10, 2019, Defendant pleaded guilty to two counts of conspiracy with intent to distribute cocaine in violation of 21 U.S.C. sections 841(a)(1), 841(b)(1)(C), and 846, and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. section 922(g)(1). *See* Change of Plea Hearing [ECF No. 96]; Plea Agreement [ECF No. 99]. The charges stemmed from a confidential source's multiple controlled purchases of cocaine supplied by Defendant to others—coupled with intercepted conversations between Defendant and multiple individuals discussing the sale of controlled substances. *See* Factual Proffer [ECF No. 100]. Ultimately, a search of Defendant's residence uncovered cocaine, a stolen firearm, and ammunition in Defendant's dresser. *Id.* at 10.

At sentencing, Defendant was held responsible for a total of approximately 629.73 grams of cocaine. *See* Presentence Investigation Report [ECF No. 162] ("PSI") ¶ 99. Defendant's criminal history included convictions for carrying a concealed firearm, possession of cocaine and cannabis, battery, violations of probation, grand theft, and driving while license suspended. *Id.* ¶¶ 122-128. However, because his convictions were too old, Defendant scored zero criminal history points, and based upon a total offense level of 23, his guideline imprisonment range was 46 to 57 months. *Id.* ¶ 166.

The Court sentenced Defendant to a bottom-of-the-guideline sentence of 46 months. *See* Judgment and Sentence [ECF No. 167]. He has served approximately 17 months of his sentence and is scheduled to be released on February 15, 2023.

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Macort v. Prem,*

*Inc.*, 208 F. App'x 781, 783-84 (11th Cir. 2006). The district court "may accept, reject or modify, in whole or in part, the findings of the recommendations made by the magistrate judge." *Id.*; *see also* FED. R. CRIM. P. 59(b)(3); *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). "[I]n determining whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review." *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982)). Legal conclusions are subject to *de novo* review, even if no party specifically objects. *See U.S. v. Keel*, 164 F. App'x 958, 961 (11th Cir. 2006); *U.S. v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982).

## APPLICABLE LAW

"A district court may modify a sentence only if the modification is authorized by a statute or a rule." *United States v. Monaco*, 832 F. App'x 626, 628 (11th Cir. 2020) (citing *United States v. Puentes*, 803 F. 3d 597, 605-06 (11th Cir. 2015)). As amended by the First Step Act, 18 U.S.C. section 3582(c)(1)(A) grants district courts the authority to reduce an imposed term of imprisonment upon motion by the Director of the Bureau of Prisons ("BOP") or upon motion of the defendant if certain requirements are met. A defendant may move for a reduction of his or her sentence under section 3582(c)(1)(A) only after fully exhausting "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). [1]

The statute permits a court to reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with

---

[1] Here, all parties agree that Defendant has exhausted administrative remedies with the BOP. *See* Rep. at 5; *see also* Mot., Ex. 1 (Letter from Warden Denying Reduction in Sentence Request); Government's Resp. to Mot. for Compassionate Release [ECF No. 198] at 11 n.2.

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission policy statement applicable to motions for compassionate release filed by the BOP is found in U.S.S.G. § 1B1.13. Section 1B1.13's extraordinary and compelling reasons for compassionate release include: (A) a medical condition where the prisoner is suffering from (i) a terminal illness, or (ii) deteriorating health related to aging that substantially diminishes the ability of the prisoner to provide self-care within the prison; (B) the serious deterioration in physical or mental health of a prisoner who is at least 65 years old and has served a certain portion of his term of imprisonment; (C) the death or incapacitation of the caregiver of the prisoner's minor child; and (D) other reasons as determined by the Director of the BOP. U.S.S.G. § 1B1.13, comment. (n.1). Further, U.S.S.G. § 1B1.13 requires a finding that the defendant is not a danger to the safety of any other person or to the community.

Although the Eleventh Circuit has not yet "held in a published opinion whether § 1B1.13, which on its face applies only to motions for compassionate release filed by the BOP and has not been amended following the First Step Act, constrains district courts in considering compassionate release motions filed by prisoners themselves," it has held that it is not an abuse of discretion for the district court to consider that policy statement when deciding such motions. *United States v. Granda*, No. 20-13014, --- F. App'x ---, 2021 WL 1246252, at *2 (11th Cir. Apr. 5, 2021). Thus, like several other courts in this district and in other jurisdictions, the Court treats section 1B1.13 as useful but non-binding guidance in determining extraordinary and compelling circumstances for section 3582(c)(1)(A) motions filed by prisoners. *See, e.g., United States v. Itah*, No. 19-CR-60274, 2021 WL 1126174, at *4 (S.D. Fla. Mar. 24, 2021); *United States Moore*, No. 5:93-CR-00137, 2021 WL 842549, at *5 (N.D. Ala. Mar. 5, 2021); *United States v. Poulnott*, No. 1:89-cr-00001, ---F. Supp. 3d---, 2020 WL 7974295, at *3 (N.D. Ga. Dec. 30, 2020). In other words, "the Court is not limited to the technical requirements set forth in 1B1.13 in assessing whether a

defendant's application for compassionate release provides 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." *Poulnott*, 2020 WL 7974295, at *3; *see also United States v. Bech*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

Critically, even when the Court finds that extraordinary and compelling circumstances warrant a sentence reduction, it must still consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). A court may deny a defendant's motion if the court determines that the section 3553(a) factors override what would otherwise be "extraordinary and compelling reasons" for a sentence reduction. *See id.*; *United States v. Bell*, No. 18-CR-60115, 2021 WL 917675, at *4 (S.D. Fla. Mar. 10, 2021) ("[E]ven assuming that extraordinary and compelling circumstances exist, . . . the Court must still determine whether the sentencing factors under § 3553(a) support Defendant's release and whether Defendant poses a danger to the safety of others or to the safety of the community pursuant to § 3142(g).").

## **ANALYSIS**

As an initial matter, the Court assumes—without deciding—that Magistrate Judge Strauss was correct in concluding that "Defendant has met his burden of demonstrating extraordinary and compelling reasons weighing in favor of compassionate release." Rep. at 11.[2] Of course, this is

---

[2] In reaching this result, the Report conducted an extensive analysis of Defendant's underlying medical conditions and reviewed the number of COVID-19 infections within Defendant's facility and the rate of infection throughout BOP institutions as a whole. *See* Rep. at 5-11. Ultimately, Magistrate Judge Strauss concluded that given the presence of "risk-elevating" factors (a diagnosis of heart disease and heart failure, hypertension, hyperlipidemia, previously treated prostate cancer in remission, and the implantation of a defibrillator)—coupled with Defendant's 63 years of age—established that Defendant had "met his burden of demonstrating extraordinary and compelling reasons weighing in favor of compassionate release." *Id.* at 11.

not the end of the inquiry, as "compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (alterations added); *see also Monaco*, 832 F. App'x at 629 (explaining that if there are "'extraordinary and compelling reasons' for compassionate release, the district court has the discretion to reduce the defendant's term of imprisonment after considering the applicable section 3553(a) factors."). "Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing," the Court must assess whether "immediate release would be consistent with those factors" upon consideration of the circumstances underlying the request for compassionate release and the time remaining in Defendant's sentence. *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

Here, Magistrate Judge Strauss found "that, while close, the factors in 18 U.S.C. § 3553(a) weigh in favor of compassionate release." Rep. at 12. This Court disagrees. The section 3553(a) factors include, among others, the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; and (5) protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

The Court finds that the section 3553(a) factors disfavor a sentence reduction. At the time of sentencing, this Court concluded that a bottom-of-the-guidelines term of imprisonment of 46 months was appropriate. Specifically, this term of imprisonment was imposed due to the seriousness of the underlying offense—which initially involved a five-year minimum-mandatory sentence for possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. section 924(c). As part of the plea deal, the Government agreed to dismiss the section 924(c) count in exchange for Defendant's guilty plea, thereby avoiding the imposition of a 60-

month minimum mandatory penalty in addition to the 46 months for conspiracy with intent to distribute cocaine and possession of a firearm by a convicted felon. Further, the Court opted to impose a bottom-of-the-guideline sentence due to Defendant's minimal criminal history, which was comprised of convictions too old to be counted for purposes of determining his criminal history score. And to date, Defendant has served less than half of his sentence.

The Court's sentence was also deemed appropriate to prevent the imposition of disparate sentences in this case. At the Court's request, the Government presented a summary table at sentencing reflecting the offense conduct of each of the eight defendants involved in the instant drug conspiracy. *See* United States of America's Sentencing Memorandum [ECF No. 164] at 2. Defendant distributed the greatest quantity of drugs and was only one of two defendants in possession of a firearm. *See* Sentencing Transcript [ECF No. 205] ("Tr.") at 11:5-15 ("When I look at Mr. Minnis, I will confess, he is in a very different category than everyone I've sentenced already, not only because of the firearm issue that we have discussed already . . . but also by cocaine quantity. The drug quantity is considerably higher than it was, for instance, with [his co-defendants] . . . that, obviously, is a major distinguishing factor when you combine that with a firearm."). Accordingly, if Defendant's sentence were reduced to time served and he were to be placed on supervised release for the remainder of his sentence, with a special condition requiring home confinement, he would receive a lesser sentence than everyone else involved in the conspiracy. The Court disagrees with the Report's conclusion that such a wide disparity is permissible given the Defendant's "respective medical conditions." Rep. at 13. This Court's obligation to avoid unwarranted sentencing disparities under section 3553(a)(6) militates against such an accommodation—especially in light of the COVID-19 vaccine, as explained below.

Magistrate Judge Strauss understandably believes that Defendant's sentence has now become harsher given the risk of severe illness from COVID-19 and Defendant's many risk

factors. *See* Rep. at 13. To be sure, BOP statistics indicate that out of 708 total inmates at Defendant's facility—FCI Butner Medium I—there have been 182 reported cases of COVID-19. *See* BOP, *COVID-19 Inmate Test Information,* https://www.bop.gov/coronavirus (last visited Apr. 19, 2021). However, since the advent of the COVID-19 vaccine, given BOP's commitment to making the vaccine available to all inmates who wish to receive it as quickly as possible, there have been more full inmate inoculations completed in the Butner Federal Correctional Complex than *any other* BOP facility. *See* BOP, *COVID-19 Vaccine Implementation,* https://www.bop.gov/coronavirus (last visited Apr. 19, 2021). In fact, BOP statistics indicate that over 50% of inmates (1,802 out of 3,438 total inmates) in the Butner Federal Correctional Complex have received the COVID-19 vaccine. *Id.* Given such wide-spread vaccine distribution in Defendant's facility, this Court disagrees that the "risk of illness Defendant now faces necessarily changes [the] calculus" when it comes to the application of the section 3553(a) factors—and early release is no longer the correct answer to the "close question" identified by Magistrate Judge Strauss. *See* Rep. at 12-13.

Ultimately, the Report is correct that the formula for compassionate release is not static. It requires a careful balance of competing factors, namely the presence of extraordinary and compelling circumstances and whether they outweigh the nature and circumstances of the offense or Defendant's criminal history and characteristics. *See United States v. Rind*, 837 F. App'x 740, 744 (11th Cir. 2020) (affirming denial of compassionate release where the court did not find an "extraordinary and compelling reason to grant [defendant's] release based on its consideration of the 3553(a) factors."). At sentencing, this Court "accounted for Defendant's culpability in comparison to his co-defendants and the seriousness of his offense, in light of the amount of cocaine for which Defendant was responsible, his heavy involvement in the charged conspiracy, and his possession of a [stolen] firearm." Rep. at 12; *see also* Tr. at 11-12. Allowing Defendant

to be released after serving less than half of his imposed sentence would disturb this careful balance by failing to promote respect for the law, provide just punishment for the offense, or afford adequate deterrence.[3]

## CONCLUSION

After considering all of the relevant circumstances and information presented, the Court concludes that the section 3553(a) factors simply do not favor a reduction of Defendant's sentence. *See, e.g., United States v. Hernandez*, No. 14-CR-20624, 2021 WL 736411, at *2 (S.D. Fla. Feb. 24, 2021); *United States v. Williams*, No. 19-CR-33, 2021 WL 1238410, at *2 (M.D. Fla. Apr. 2, 2021); *United States v. Seshan*, No. 14 CR. 620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020). Accordingly, for the reasons stated herein, it is

**ORDERED AND ADJUDGED** that the Report and Recommendation [ECF No. 207] is **REJECTED** and Defendant Edward Minnis's Motion for Compassionate Release [ECF No. 194] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of April, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[3] Given that Defendant's release is unwarranted in light of the 3553(a) factors, the Court need not further analyze whether Defendant poses a danger to the safety of the community under section 3142(g). *See United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) ("The factors listed in 3142(g) are largely duplicative of those in 3553(a).") (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).